**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
**KRISTEN HAIGHT,**

|  |  |
|---|---|
| **PLAINTIFF,** | **AMENDED** |
|  | **VERIFIED** |
|  | **COMPLAINT** |
| -against- | **Pursuant to** |
|  | **Court Order** |
| NYU LANGONE MEDICAL CENTER,INC. | Judge Schofield |
| NYU MEDICAL CENTER, NYU SCHOOL OF MEDICINE, |  |
| MEDTRONIC, INC.; CONSIGNMED, INC. | **Docket 13Civ.04993** |

**DEFENDANT(S)**

------------------------------------------------------------X

Plaintiff(s), complaining of Defendant(s), by attorneys **THE LAW FIRM OF JEFFREY  LESSOFF** respectfully show the court and allege as follows upon information and belief:

1.     That at all times herein mentioned, the defendant, **NYU LANGONE  MEDICAL CENTER,** by its agents, servants and/or employees, was and still is licensed to do business in the State of New York.

2.     That at all times herein mentioned, the defendant, **NYU LANGONE MEDICAL CENTER,** by its agents, servants and/or employees, was and still is licensed to do operate in the State of New York.

3.     That at all times herein mentioned the defendant, **NYU**

LANGONE MEDICAL CENTER, by its agents, servants and/or employees, operated out of the building and premises located at 550 First Avenue, New York, New York.

4.     That at all times herein mentioned the defendant, **NYU LANGONE MEDICAL CENTER,** by its agents, servants and/or employees, managed the building and premises located at 35 East 125th Street, New York, New York.

5.     That at all times herein mentioned the defendant, **NYU LANGONE MEDICAL CENTER,** by its agents, servants and/or employees, controlled the building and premises located at 35 East 125th Street, New York, New York.

6.     That at all times hereinafter mentioned the defendant, **NYU LANGONE MEDICAL CENTER,** is a hospital/medical facility.

7.     That at all times hereinafter mentioned the defendant, **NYU LANGONE MEDICAL CENTER,** by its agents, servants and/or employees, hired all employees, including, but not limited to all doctors, nurses and administrative staff members at said hospital.

8.     That at all times herein mentioned, the defendant,

**MEDTRONIC, INC.,** by its agents, servants and/or employees, was and still

is licensed to do business in the State of New York.

9.     That at all times herein mentioned, the defendant,

**CONSIGNMED, INC.,** by its agents, servants and/or employees, was and

still is licensed to do business in the State of New York.

10.    That at all times herein mentioned, the defendant,

**MEDTRONIC, INC.,** by its agents, servants and/or employees, was and still

is licensed to do operate in the State of New York.

11.    That at all times herein mentioned, the defendant,

**CONSIGNMED, INC.,** by its agents, servants and/or employees, was and

still is licensed to do operate in the State of New York.

12.    That at all times herein mentioned the defendant,

**MEDTRONIC, INC.,** by its agents, servants and/or employees, operated

out of the building and  premises located at 550 First Avenue, New York,

New York.

13.    That at all times herein mentioned the defendant,

**CONSIGNMED, INC.,** by its agents, servants and/or employees, operated

out of the building and  premises located at 550 First Avenue, New York,

New York.

14.    That at all times herein mentioned the defendant,

**MEDTRONIC, INC.,** by its agents, servants and/or employees, managed the

building and  premises located at 35 East 125th Street, New York, New York.

15.    That at all times herein mentioned the defendant,

**CONSIGNMED, INC.,** by its agents, servants and/or employees, managed

the building and  premises located at 35 East 125th Street, New York, New

York.

16.    That at all times herein mentioned the defendant,

**MEDTRONIC, INC.,** by its agents, servants and/or employees, controlled

the building and  premises located at 35 East 125th Street, New York, New

York.

17.    That at all times herein mentioned the defendant,

**CONSIGNMED, INC.,** by its agents, servants and/or employees, controlled

the building and  premises located at 35 East 125th Street, New York, New

York.

18.    That at all times herein mentioned the defendant,

**MEDTRONIC, INC.,** is a vendor that does business with co-defendant,

**NYU LANGONE MEDICAL CENTER and Co Defendant CONSIGNMED,Inc.**

19.    That at all times herein mentioned the defendant, **CONSIGNMED.,** is a vendor that does business with co-defendant, **NYU LANGONE MEDICAL CENTER.**

20.    That **MICHELLE BLATE** was employed by the defendant, **NYU LANGONE MEDICAL CENTER,** from about January 1995 to December 2009.

21.    That **MICHELLE BLATE,** was employed by the defendant, **MEDTRONIC, INC.,** during the period of January 2010 to present.

22. That **MICHELLE BLATE,** was employed by the defendant, **CONSIGNMED, INC.,** during the period of January 2010 to present.

**Relevant Facts to the Issues Herein:**

23.    The plaintiff was an excellent Pediatric Nurse at **NYU LANGONE MEDICAL CENTER,** for approximately **19** Years or since

July 27, 1992. While employed there, she consistently was given good grades and writeups by her superiors and supervisors.   However, beginning in the year 2003 to the present Defendants allowed, suffered and encouraged a Hostile work environment despite formal written complaint against fellow employees. Many of these complaints revolve around **MICHELLE BLATE**, an employee at **NYU LANGONE MEDICAL CENTER,** and MEDTRONICS and CONSIGNMED.

24.    On or about February of 2005, MICHELLE BLATE discussed with  another nurse, the personal medical problem of  Plaintiff with another surgeon employed with **NYU LANGONE MEDICAL CENTER** and got updates pertaining the Plaintiff.

25.    On or about June 2005, MICHELLE BLATE tried to get the plaintiff terminated because Plaintiff wasn't returning her late night phone calls or advances to come over and order in and rent a movie.

26.    On or about November 2005, MICHELLE BLATE, put her hands down the plaintiff's underwear to allegedly adjust a label without the plaintiff's consent. Plaintiff reported her, but nothing was done.

27.    In 2005-2006, the plaintiff inquired about having a security seal

of her medical record on hospital computer system but was denied.

28.    In 2007, plaintiff became ill and needed to have surgery.  She avoided admissions to hospital by having non NYU office visits.

29.    In Spring 2007 another NICU nurse who is friends with MICHELLE BLATE advised the plaintiff that she was going to go to the plaintiff's surgeon for "the same thing I have and getting same treatment".

30.    On January 10, 2008, plaintiff's gynecological problems became worse. She started treatment in NYU ED.  At that time, she begged the resident Doctor and attending doctor, Dr. Williamson, not to put certain embarrassing information in her chart! The plaintiff explained that there were "intrusive bad people in my division who will look up my stuff and disclose my private information." The Resident applauded plaintiff for refusing gynecological exam. The Attending Doctor assured the plaintiff that he wouldn't  put "anything" in chart that would peak interest or curiosity.

31. In the Fall of 2008, plaintiff discussed with Maria Brillant, Director of Care Management, and Phyllis Marchitelli, Assistant Manager of Nurse Practitioner and Physician Assistant (under the direction of Maria Brillant) her concerns about being a patient at **NYU LANGONE MEDICAL CENTER**, and being accessed and scared of personal information known or

disclosed, they both assured the plaintiff that the Hospital would protect her right to privacy and that she need not change her name.  The plaintiff was promised discretion, protection and a HIPAA investigation after it was done.

32.    On December 11,2008, Plaintiff told the OB-GYN surgeon at **NYU LANGONE MEDICAL CENTER**, that she wanted to change her name on the medical charts, for fear of intrusive coworkers. Plaintiff told him she would not do traditional PST and wanted to avoid "traditional paper work and familiar pre-op places."

33.    On December 11,2008,  after her surgery was scheduled, the plaintiff's  surgeon had discussions with Dr. Jeffrey Wisoff, about the type of surgery the plaintiff was having and mentioned that it was similar to his daughter's. surgery.

34.    On or about December 2008, plaintiff's  salary merit letter was opened and the envelope left on hospital office desk. **MICHELLE BLATE**, asked the plaintiff if she had read the letter.  Plaintiff asked her what letter she was making reference to and mentioned that there was an open empty envelope on her desk.  **MICHELLE BLATE** answer "no it was in there". Plaintiff  complained to defendant NYU Administration in writing.  Plaintiff emailed to the USPS to make sure that all  letters were mailed to the

individual and not left on a desk, especially when they are of a personal

nature; and they not leave open envelopes on her desk because of intrusive

people at work.

35.    On January 4,2009, the report of the hospital's investigation

indicated that  MICHELLE BLATE, was found to have breached security and

that she entered into plaintiff's medical record electronically the day before

her surgery.

36.    On January 5,2009, the day of plaintiffs surgery, Dr. Wisoff had

"told the team that Kristen was having minor surgery and will be back in a

few weeks" (Plaintiff had asked him not to say anything to anyone.  She had

taken off and was "out" on the work schedule and calendar.

37.    The investigation noted that MICHELLE BLATE went into the

plaintiff's medical record electronically, and was found to have, once again,

breached security in that she entered into plaintiff's medical record on

January 5, 2009, without consent.

38.    On January 5,2009,  Deborah Wisoff called Edi, secretary for

plaintiff's surgeon and asked if plaintiff was in recovery yet. She was not

given privy access nor did she have right to know when the plaintiff got to

the Recovery Room.  Deborah came to the Recovery Room to "see" plaintiff and did nothing but talk about when her daughter had surgery. The nurse asked her to leave when she got loud and animated.

39.    January 5,2009, the nurse called Maria Brillant, and advised that plaintiff requested a private room like other RNs that have "that" kind of surgery/privacy.  She was too busy to come to phone. The plaintiff  was admitted to the floor that her "team" uses. (At NYU Hospital).

40.    On January 16,2011  Maria Brillant came to see the plaintiff and brought her home, put a hat on her and covered her and wheeled her out using the back elevators.  Ms. Brillant walked the plaintiff to her home (approximately one block) then she advised that she was going to bring prescription to pharmacy.  She returned back to plaintiff's apartment with the prescribed medication and returned to her office.

41.    During her sick leave, Dr. Wisoff called the plaintiff at her parents home where she was recovering from surgery to find out where he should send patients for certain problems since plaintiff is the expert (harassment while sick leave)…. then he asked the plaintiff how she was feeling.  He got his daughter on the phone to tell the plaintiff that the way to treat endometriosis is to get pregnant then she got off the phone.

42.   On January 26,2009  plaintiff returned from sick leave.

43.   On January 26,2011,  a fellow surgeon Dr Roth said, "so I heard what you had was just a surgical problem and that you are all better now!" The plaintiff  asked Maria Brillant on February 26,2011(via email) for a HIPAA investigation as to how this doctor knew all about her surgery but she refused an investigation.

44.   Plaintiff requested a second time on February 27,2009, and was told that an investigation will result in termination of employees.  Plaintiff was told she was being paranoid.  She was further told, that an investigation is impossible and wouldn't be done since her reason for the request was as a result of a hunch or a feeling.

45.   On March 3,2011, Plaintiff  received threatening harassing text messages on her cell phone by Michelle Blate when she was out sick and when she had 'scheduled time off'.

46.   On March 5, 2009, plaintiff went to Maria Brillant to complain, once again, and requested that a further HIPAA Investigation be had.  Ms. Brillant admitted to plaintiff that she was aware of the HIPAA violation when

she told the plaintiff "don't worry, Michelle is in so much trouble already, you won't have to get her fired for going into your chart, she is going to be fired on her own.

47.    In March 2009 Michelle was found electronically in plaintiff's chart again. Plaintiff had just been in the Emergency Room, again, for suspected pneumonia and an asthma attack. She was undergoing chemical treatments but the resident wrote "chemical menopause" on her medical chart.

48.    Although a patient gave Dr. Wisoff a book written by a psychiatrist about the spirit of happiness, the doctor handed the book to the plaintiff in front of the medical team she worked with and stated "Oh this is for you". Insulted, the plaintiff flung it to the floor and said no thank you, how dare you? Dr. Harter looks at me and says in a sarcastic and bitter voice in front of the medical team "In the book there is a section on women who are cursed by God because they have no children and quoted the bible old testament."

49.    Spring and Summer 2009 through 2010 MICHELLE BLATE
        was appointed HIPAA compliance teacher for illegal aliens.

50.    In June 2009 the plaintiff had a discussion with Maria Corbo, An Administrator at **NYU LANGONE MEDICAL CENTER,** and stated "I hear you two are not getting along", so then plaintiff told her of her concerns over the HIPAA violation done to the Plaintiff and the comments she heard about contents in her chart and Maria Brillant's denial to do an investigation. At that time, Ms. Corbo, initiated the HIPAA investigation for plaintiff by phone and called Maxine Simon and told her to keep the plaintiff anonymous and encouraged her to pursue investigation.


51.    Plaintiff found out that another employee in Administration had elective surgery and that patient was so paranoid that she changed her name and ran HIPAA Investigation on her chart "just in case" --- she was allowed as a patient and employee to do investigation but plaintiff was not.  Maria Brillant is Director of Care Management, not just boss of Nurse Practitioners and PAs, complaints go thru her office.  As a manager and administrator, she had moral ethical and legal obligation to follow through on plaintiff complaints as a patient and employee.


52.    During the Summer of 2009, Deborah Wisoff the wife of the Dr. Jeffrey Wisoff, the Director of the Division of Pediatric Neurological Surgery at NYU Langone Medical Center, asked the Plaintiff to look up Dr. Wisoff's sister who just had surgery.  The plaintiff said no way , that is a

HIPAA violation.  Debbie responded that she "was family, no it isn't".  She wanted to know if she is in recovery.  She said she will have MICHELLE BLATE do it.  Plaintiff reminded her that they are "not allowed" and that it would be a "HIPAA violation".  Debbie thereafter obtained the information without the help of the plaintiff.

53.    By the fall of 2009, a secretary told the plaintiff that another secretary told her that a the plaintiff is a virgin.   By this time the other Nurses Practitioners on floors "hate me and talking about me, always sick, never sick, do nothing" slander somehow made it to a former employee in Colorado then back to New York to plaintiff.   Random doctors in the Operating Room and Anesthesiologists in passing asked the plaintiff how is she feeling and inquired if there were any more surgeries lined up?

54.    On October 28,2009, plaintiff  went to Maria Corbo  and called Maxine Simon, the HIPAA Compliamce Officer, and filed a complaint.  She said, "write complaint and she will get back to me soon and I would have investigation and results in less than 30 days and that I would know everyone who was in my chart and the results of investigation.  She thanked me for coming forward."   Plaintiff did not  hear back until December 2009.

55.    On or around November, 2009, Plaintiff started to contact Nurse

Recruitment Department regarding other in house jobs so she would be able to transfer out of what had become a hostile work environment.

56.    In December 2009,   (6-8 wks later) the plaintiff received calls at home (time off) and emails requesting HIPAA meeting. She met with Sheila Furjurnick (HIPAA officer replaced Maxine Simon) and Maria Brillant. Told them all concerns, mentioned everyone who she knew was in her chart (with and without permission) they said, "oh boy, now we can't fire the entire hospital.  If we know it was MICHELLE BLATE, let's just look for her" and I was promised I would have the results in a couple of weeks and that they would meet with me again to go over the results. Pursuant to NYU Employee Manual, the plaintiff had the right to see who was in her chart.

57.    On January 8, 2009, a HIPAA meeting was held with Maria Brillant and Shelia Fujurenec.

58.    On January 4, 2010, plaintiff came to work and  was told sarcastically by Dr. Wisoff and his wife, Deborah, that **MICHELLE BLATE** was on leave of absence due to personal space issues.  The male doctors (Dr. Howard Weiner, who referred Michelle Blate to be employed at NYU, and Dr. David Harter, Pediatric Neuro Surgeon, and office staff)

started treating plaintiff worse than the normal bad treatment.  **MICHELLE BLATE** Is terminated.

59.    On or around December 31, 2009, Deborah Wisoff gets a Resume across the table at a wedding for **MICHELLE BLATE.**

60.    On January 5,2010, Plaintiff bumps into NYU employee, Sheila from Compliance Investigation Office, and the plaintiff was denied any information regarding MICHELLE BLATE, but that she was fired and not coming back.   She further advised me to "Let me know if they treat you worse, they all know." Plaintiff told her of MICHELLE BLATE'S unannounced unescorted visit to my office on January 4, 2010, and took equipment.

61.    In February 2010 Anesthesiology Dr. Ilia Kramer advises the plaintiff that "I saw Michelle outside and she said to tell all the guys Hi and that I am coming back to the OR soon." Michelle called to see if the Plaintiff is there and tells the other employee that she is on her way to office (but never showed).

62.    On or around February 2010, Dr. Wisoff mentions the movie the

40 year old virgin to the Plaintiff. " I said, oh, I never saw it and changed the topic. "

63.   The plaintiff was questioned by the secretary again, if she "had fibroids don't you?.  Why aren't you pregnant yet? Haven't you been trying? Why don't you go and get tested today? Come on, Kris, go and get pregnant! You'll be soooo happy. "

64.   Somewhere between 2/10 and 3/10 while the plaintiff was cleaning her desk she found a used pregnancy stick test that was placed there to harass Plaintiff.

65.   On or about March and April 2010, there wherein hospital official sightings of MICHELLE BLATE at plaintiff  usual work spaces, hospital and office.  Plaintiff called security and explained her situation.  The told her if she saw her again then she should dial 911 and call police.

66.   On or about March 2010, Melissa Caparell, a legitimate hospital vendor with Integra sees and speaks with MICHELLE BLATE in the hospital lobby. Ms. Caparell contacted the plaintiff to warn her that she is a "nurse educator" and was told "I am back with the guys now and will be back in the OR and you will see me" MICHELLE BLATE  had an ID and scrubs.

67.    In March 2010 Maria Brillant asked the plaintiff to transfer to her office to work with her (email) and she reminded me that my work with those animals (neurosurgeons and Michelle) and kindness to all of them including Michelle was a corporal work of mercy and that as an Apostolate, will cut down on my purgatory time. I told her Michelle Blate is back and she said she is not allowed back. Ms. Brillant suggested that plaintiff "Come work with me and you won't see her."


68.    On March 19,2010 Plaintiff had lunch with Maria Brillant and was asked "so what ever happened to Michelle?" Plaintiff told Ms. Brillant, "Maria you fired her for being found in my chart multiple times." She said, I know but I heard you two were like friends or something. Plaintiff told her Michele was back and in my work environment literally, she said, I know but oh no, that's not allowed. She said she told Sheila Furjurnec that Michelle is not allowed and promised me that I am safe and she wouldn't come back on campus where I work again.


69.    In April 2010, Nidia Ortiz, a Nurse Practioner, confirmed a visual of MICHELLE BLATE speaking on the 9th floor with Bernadette and warned Plaintiff. Kristin Haight, called Albany, and was told there were no complaints against Michelle, so they never reported her to OPD.

70.    Plaintiff called the District Attorney's office, and was advised that she needed a Protective Order but needed to call police first to get one.

71.    In April of 2010, MICHELLE BLATE called to see Plaintiff was at a location in office and was on her way over. Plaintiff call security and was advised to call New York City Police.

72.    On April 8,2010 plaintiff met with Shelia from HIPAA Compliance Office and made a further complaint that MICHELLE BLATE had access to plaintiff's records and her patients and plaintiff's work space and was on her way over causing to vomit and faint.

73.    The plaintiff confirmed MICHELLE BLATE, was fired for being in her chart multiple times and She reiterated I have a big file with the investigation.  The plaintiff reminded her Michelle knew she was fired because  of plaintiff and that the doctor all knew and that she can not discuss it.

74.    The plaintiff asked how many times was MICHELLE BLATE in her medical chart, but was denied a response and was told they could not disclose.  Plaintiff asked when was Michelle in Plaintiff's chart. Again, can't she was advised that they could not disclose.  She took Plaintiff's  name and

personal phones and said she would contact plaintiff, Maria Brillant and Human Resources and ensured Kristin Haight's safety.

75.    From April 10, 2010 to April 10, 2010, MICHELLE BLATE, appeared at NYU. More phone calls about Haight, more patient information, more days she is on premises, Plaintiff finally had to tell Donato Pacione , surgical resident, why she couldn't be in certain areas. So he would let plaintiff know when she was "gone" .

76.    Plaintiff got Policy and Procedure Manual (hereinafter called P+P) about Operation Room (OR) and Vendors, Kathy Allen in OR says no  vendor or nurse educator allowed to be in units, only outside OR if invited and are not allowed patient information until case is over to register with FDA. Nurse educators are NOT allowed to have patient information ever, your office should not be supplying information as HIPAA Violation.

77.    On or about April, 2010, the plaintiff wrote to the Compliance Office regarding this before she got P+P, they wanted to meet, the plaintiff said," I already got the OR P+P information I needed. " Plaintiff informed office staff of HIPAA violation and advised that they are not to give information to any of the representative vendors and nurse educators, but

they continued to do so. Maggie secretary posted "surgery conversation with Michelle Blate on one of our patients on "facebook" pages.  Furthermore, Michelle Blate asked plaintiff "what's a skin tag?"

78.    End of April 2010, plaintiff advised that she was going to visit a male friend in Europe, when Dr Wisoff said "I want to know the moment you conceive".  The plaintiff told him that she felt that comment was disgusting.

79.    On or about April 2010, a supposed letter from hospital Legal Department and Human Resource was sent to Medtronic stating that MICHELLE BLATE was not allowed on the NYU campus at all. There were still subsequent multiple showings of Michelle at NYU.

80.    On or about May, 2010, plaintiff had a conversation with Dr. Wisoff regarding hiring and interviewing a new inexperienced Nurses' Practitioner, and during the conversation, the doctor brings up again, the 40 year old virgin.  This time he adds on "you know it's like petting something furry for the first time",(indicating something of a sexual nature) embarrassing the plaintiff.

81.    During the Spring-Summer of 2010, MICHELLE BLATE was in the NICU visiting Maria Brillant RN premature baby and the staff in PICU.

There were also multiple visits to the neurosurgery office. Multiple calls of plaintiff's location and whereabouts and surgeries and patient information.

82.    On or about June 2011, the plaintiff received harassing e-mail forwarded from Bellevue about HIPAA and compliance from Debbie Wisoff. Her email said she noticed my name wasn't on it.

83.    During the Summer of 2011, Lisa Robins. a legitimate representative from **Medtronic, Inc.,** told the plaintiff that MICHELLE BLATE is working at NYU as Nurse Educator and vendor fill-in and can vouch for when she worked.

84.    In July , 2011 plaintiff had a meeting with Maria Brillant and complained again.  She said, so who do you go to for OB-GYN?  The plaintiff responded to Ms. Brillant that the question was an inappropriate question.  I don't go to nyu doctors anymore for obvious reasons.  She said, so what ever happened to MICHELLE? I heard you two were like best friends. .."  The plaintiff reminded her that she became physically ILL every time MICHELLE BLATE came on campus or calls the office looking for me etc. Why won't you help me?  Ms. Brillant responded "I know, she is not allowed back on campus, that's what I keep telling "them""

85.    From January 2010 through the August, 2010, plaintiff was asked repeatedly by Maggie, "so why aren't you pregnant yet? Haven't you and your boyfriend been trying? Come on Kris, you will be sooo happy".

86.    Dr. Wisoff denies experienced NPs with adult license. The plaintiff was thereafter advised by Jessica Lessing, an employee at NYU that she (Lessing) admits to lying on her Resume and that she was hired due to common Jewishness and not to tell anyone. Also, the plaintiff 's salary was discussed and left on a sticky note for secretaries to discuss. The New hire asks plaintiff if growing up in Catholic house hold was difficult? and "Was there any boy interests?"

87.    On or about August 5, 2010, Plaintiff saw MICHELLE BLATE, in the Operating Room. The resident doctor, Donato Pacione, M.D. tried to warn Plaintiff that he saw MICHELLE BLATE, using the hospital phones. He further confirmed with Jessica Lessing that she was there and who confirmed that she also saw her as well. Thereafter, Dr. Wisoff confirmed that MICHELLE BLATE was working as a vendor and would be around staff.

88.     On or about August 2010, Dr. Wisoff changed Plaintiffs OR days to days when MICHELLE BLATE was scheduled to be in. New ,inexperienced Jessica Lessing wanted to be the office provider and have me in hospital all week.  She was hired for both office and hospital.  The Plaintiff explained to them that she could not work on the same days in the OR because her presence affected me physically and emotionally.  Dr. Wisoff's commented that he "see you are getting upset", then he hugs me and says everything will be ok. I puked.   During the months of June, July and August, the nurses would challenge Plaintiffs orders and state that "that's not what MICHELLE BLATE ordered them to do.

89.     On August 23 2010, staff members left on Plaintiffs desk a copy of superior  recommendation for MICHELLE BLATE, endorsed by Dr. Wisoff.

90.     On August 30, 2010, MICHELLE BLATE, called the floor looking for plaintiff, then came to the plaintiffs office where she  was. The plaintiff  called security and they said call 911.  Before leaving she muttered to secretaries, I better leave before a certain someone sees me.  The secretaries said, wow, what did Kristen do to her? Security came.  They

interviewed me after taking me to their office in hospital.  Although I was assured that she would not be able to enter hospital, she was allowed to do so.

91.   Employee Health, NP Helen Ruddy, sends note removing Plaintiff from hostile work environment saying, Kristin Haight may not return to work and cannot come back due to work related illness.  Crisis counselor says the plaintiff was abused and it doesn't matter 'what I did,".  The plaintiff was forced to use her sick leave.

92.   Thereafter, the plaintiff received harassing emails from Maria Brillant and her assistant.  Their confusion regarding sick time off. The plaintiff e-mailed security statement to Ms. Brillant and assistant which was sent to Nicole Delts of Human Resources.  Two days later Ms. Brillant sends email to the plaintiff stating "we understand your predicament but your orientee is here and you have an obligation to her. We have to meet off campus." (harassment)

93.   Harter slanders Plaintiff to secretaries saying she is "fucking useless and they should just get rid of Kristin", when he received and read Employee health removal note.

94.    On or about September 2011, plaintiff received a phone call from Debbie Wisoff asking if she wanted to call her, she had heard plaintiff was out sick", but this was after Dr. Wisoff was told that security was in the office when  Kristen and Michelle were in the same place.  He wanted to know why was Michelle there when Kristen was there?

95.    On or about September through October 2010, plaintiff received an email from Nicole Delts, Human Resources, stating that she wanted to get together with the plaintiff.  The plaintiff  explain the situation how I  am legally and medically advised not to step foot on campus and won't speak with any of them without lawyer.   Ms. Delts said my lawyer is not allowed in the meeting.

96.    On or about October  2010, Debbie Wisoff sends out press release e-mail to office staff about me and the medical documentation of when I saw the doctor etc., (when people out or on maternity leave, they didn't get press releases).

97.    On or about October, 2010, Plaintiff  went to court hearing.  The Judge ruled that she  had a prima facie  PTSD and worked in a hostile environment.

98.    On or about October, 2010, Ms. Brillant's office called the plaintiff and advised that she had to get in touch with them (harassment on sick leave).  Ms. Brillant e-mailed the plaintiff that the Office of Professional Discipline is looking to speak with me regarding HIPAA violation.

99.    The plaintiff's complaint to Ms. Brillant was as a patient and employee.  The investigation was to be performed on behalf of the plaintiff as a patient and employee.   Administration had no right to contact her as employee, they should have given Plaintiffs mailing address or phone to them as a patient to follow up not go through hospital chain, now all higher Administration knew what happened.  The Hospital's Administration Office had no business being involved.  Now the plaintiff was put in a position to fear her Human Resources and not trust the administration that was supposed to help her.

100.    On or about December 2010 to January, 2011 Jessica Lessing by googling Plaintiff  and found her contact informant in her  private practice where she has worked (common knowledge) for over ten years.  She further investigated the plaintiff and found the per diem job that she  was covering 1-2 days a week during her leave.

101.    Ms. Lessing  shared with Ms. Wisoff and her daughter, Alyssa Wisoff about her employment outside the hospital and the work web site at her  place of employment using NYU resources to obtain information about the plaintiff.

102.    On or about December, 2010, plaintiff was deposed and was accused by Risk Management group to have "strong emotional feelings and physical relationship with perpetrator" even though this was a complete falsehood.

103.    On or about December, 2010, plaintiff requested a copy of her professional file.  Ms. Brillant delayed the request although Human Resources gave permission to the plaintiff to obtain same.  Ms. Brillant took evaluations home with her to read through them before partial copies were found to be missing and a  formal complaint made. It was finally  released end of Jan 2011.

104.    On or about January 2011, plaintiff appeared in court.  On that day, Ms. Brillant told falsehoods under oath.

105.    On or about February 2011, plaintiff received an award in her favor.

106.    Nurse Recruitment contacted the plaintiff , via email, asking her if she was on worker's compensation or sick medical leave or absence? She was told by e-mail to "sit tight" because her situation is unique.

107.    On or about March 2011, the hospital appealed the Judge's decision.  The plaintiff attorney for Compensation submitted an opposition to the appeal and is currently awaiting decision at this time.

108.    On or about April 2011, the plaintiff's doctor, Dr. Santos sent extension note which the hospital refused to acknowledge it (manual says they have to) Secretary Dee confirmed getting it.

109.    On or about April, 2011, plaintiff was advised bt Omayra Alecia and Dr. Cary Berwarld of Westcare Medical Associates, that two strange calls came in that day from a female caller inquiring about the plaintiff's standing in the office, her title, what she were her duties, what days she worked.  (STALKING and HARASSING) When the plaintiff was advised of the inquiry, it made her symptomatic in her own safety area.

110.    On or about April 2011,  Lizette and Jessica called the plaintiff Loony Tunes, a head case and a nut job.  They and Madeline Capelon, front desk reception and Maggie Cosme, secretary of Dr. Harter, have made faces

at her and further making calls to her other employer deflating her character with comments such as "she is such a horrible person", etc..

111.    On or about April 2011, Dr. Wisoff told Natasha that "plaintiff knew better than to return here after all the bridges that she burned" and further that he was "hurt I didn't' go to him first".

112.    On or about April 2010, wife and Jessica discuss the plaintiff's action, including what the Judge said and other information to Lizette and Natasha.

113.    On or about May 2011, Pat Chiabarao shared with Jessica Lessing information regarding a private patient of the plaintiff in a Non-NYU setting on a Non-NYU Prescription Pad something about a Non NYU patient (HIPAA violation) that the plaintiff wrote.

114.    On or about May 2011, the plaintiff met with Dee (Maria Secretary) on the street.  Dee advised that there is a rumor going around that the plaintiff was going to collect compensation, disability and salary? The plaintiff told her that was not the case.

115.    On or about June 2011, Dr. Wisoff starts the interviewing process to replace the plaintiff's position although the plaintiff had not resigned.  Jessica Lessing even posted Plaintiffs nursing job with her old school.  Jessica tells Natasha, " that she lied about all of this and about working.  She further tells Natasha that the doctors were happy to get rid of the plaintiff,

116.    On or about June 2011, the plaintiff was wrongfully terminated while on her Sick Leave Of Absence and during the pending NYS Worker's Compensation litigation.

## CAUSES OF ACTION
## AS AND FOR AN FIRST CAUSE OF ACTION IN NEGLIGENT SUPERVISION OR RETENTION OF AN UNFIT EMPLOYEE AND NEGLIGENCE

117. That plaintiff, repeats, realleges and reiterates each and every allegation in the Statement of Facts and in the causes of action.

118. That all the defendants had a duty to provide a safe and secure work environment and had a duty to properly supervise their employees, servants and

agents.

119. That all the Defendants failed to take reasonable steps to determine the fitness of Michelle Blate, and to terminate her promptly; or to transfer her away from the Plaintiff, when it was clear that she was a danger to this plaintiff; or to at least move Michelle Blate to a different location where the plaintiff was not present.

120. That defendants NYU had actual knowledge of Michelle Blates behavior for a number of years and that was the reason for Blates termination.

121. That Plaintiff complained to Maria Brillant about Michelle Blates behavior.

122. That Plaintiff complained to Phyliss Marchitelli about Michelle Blates behavior.

123 .That Plaintiff complained to Maria Corbo about Michelle Blates behavior.

124.That Plaintiff complained to Dr. Jeffrey Wisoff about Michelle Blates behavior.

124.That Plaintiff complained to Maxine Simpson about Michelle Blates behavior.

125. That Plaintiff complained to Sheila Furjureniec  about Michelle Blates behavior.

126. That Plaintiff complained to Helen Rudy  about Michelle Blates behavior

127.  That defendant Medtronic since April 2010 had actual knowledge of Michelle Blates past and her present  behavior and reason for her termination from Defendants NYU prior to her hiring by Medtronic or working for Medtronic as an agent.

128. That prior to April 2010 defendant Medtronic should have known, with any investigation, by constructive knowledge  into why Michelle Blate was terminated by Defendant NYU.

129. That Defendant Medtronic was negligent in its hiring of Michelle Blate and with any due diligence would not have hired her to work at the same NYU campus she was terminated from.

130 That defendant Medtronic with any due diligence, with any investigation, or with proper diligence and proper investigation, would not have retained Michelle Blate in any capacity, to work or frequent the NYU medical campus.

131. That in or about January 2011 Sheila Furjurenee notified Medtronic via Phone and by letter of Michelle Blates termination by defendants NYU and the reasons therefor.

132. That in or about January 2011 a lady from Employee Relations , from Defendants NYU notified Defendants Medtronic by telephone and by letter of Michelle Blates termination from Defendants NYU and the reasons therefor.

133. That since late 2010 or the beginning of 2011, Lisa Robins, a Defendant Medtronic   Product Representative learned of the story of Michelle Blates termination from Defendants NYU .

134. That Shannon Gomez Jeter, from Human Resources Department at NYU knew of the Michelle Blate Termination in 2010 yet allowed her to have security clearances and badges from Medtronic.

135. That Nicole Delts, Head of Employee Relations at Defendants NYU was told of the termination of Michelle Blate in 2010 and knew Michelle Blate had resurfaced as a Medtronic vendor.

136 That Nicole Delts, who was under legal advisement called Medtronics and sent a letter in June 2010 to inform them of the reason for Michelle Blates

termination.

137. That Sheila Furjurniec,  failed to follow up with Defendants Medtronic.

138.That Nicole Delts, failed to follow up with Defendants Medtronic

139. That all the  Defendants breached its duty to Plaintiff , both as a patient and as an employee.

140. That defendants failed to properly or reasonably supervise this unfit employee ,agent or independent contractor, Michelle Blate.

141. That all the defendants  deliberate  retention of the Unfit employee , **Michelle Blate** , who harmed plaintiff, and went through her secret Personal files in violation of HIPAA  Rules was negligence PER SE and became wilful , wonton behavior /conduct finally arising to the level of Gross Negligence.

142. That defendants actual or imputed knowledge of the undue risk to which it was exposing plaintiff gives rise to damages AND INJURIES, BOTH PHYSICAL AS WELL AS PSYCHOLOGICAL.

143. Plaintiffs prior factual allegations and causes of action prove defendants

overt, intentional act or series of acts which caused plaintiff harm.

144. That defendants actual malice is shown by the outrageous behavior.

145. That defendants have no excuse or justification.

146. That as a result of all of the defendants actions , behavior,  plaintiff has suffered  actual and special damages.

147.That as a result of the foregoing malevolent conduct, plaintiff suffered harm and has incurred damages.

## AS AND FOR A 2nd CAUSE OF ACTION IN QUID PRO QUO SEXUAL HARASSMENT :NEW YORK STATE HUMAN RIGHTS LAW against the NYU Defendants Only

148. That plaintiff, repeats, realleges and reiterates each and every allegation in the Statement of Facts and in the prior causes of action.

149. Plaintiff, an employee was a member of a  protected group: Females and Female Nurses.

150. Plaintiff, employee, was subject to unwelcome sexual harassment and sexually harassing conduct such as: Dr. Jeffrey Wissoff, supervising doctor, stating in front of plaintiff: " Im bored. Things are going to get sticky here unless I get an Operating room. Im just sitting around here masturbating." . Dr. Jeffrey Wissoff told the plaintiff " I recognize your wiggle when you walk". He would inappropriately touch plaintiffs hand when he reached for items from her. Dr. Wissoff told many times in front of plaintiff and others about the movie " The Forty year old Virgin." This while knowing that plaintiff was near 40 years old and a virgin and she had gynecological problems which prohibited her from engaging in sex.; that  Dr. Wissoff, inappropriately hugged plaintiff.

151. The harassment complained of was based upon sex.

152. The harassment affected tangible aspects of the employees compensation, terms, conditions, or privileges.

153. One of the Harasser's was a supervising doctor, who was in a Respondent Superior position.

154. Defendants disparate treatment of plaintiff on the basis of her gender, female, was in violation of the New York State Human Rights Law.

155. Plaintiff was subjected to sexual innuendo, foul language, and gestures of a sexual nature and dealing with female sexual subjects of pregnancy and Lesbian sexual touching of the plaintiffs panties .

156. That the offensive incidents were more than episodic and that they were continuous and concerted to be pervasive, and thus actionable.

157. As a result of the foregoing , plaintiff has been denied employment, lost wages, benefits, promotional opportunities, bonuses, has suffered mental anguish, emotional distress, and loss of enjoyment of life, and has incurred damages thereby.

## As and FOR A 3rd Cause of Action in  Sexual Harassment: Hostile Work Environment against the NYU Defendants only

158.That plaintiff, repeats, realleges and reiterates each and every allegation in the Statement of Facts and in the prior causes of action.

159. That defendants ; with Michelle Blate and Dr. Wissoff and unnamed co workers used unwelcome verbal and physical conduct of a sexual nature, including sexual foul language, sexual jokes, sexual touches, sexual gestures, or

sexual innuendo.

160. That the actual  language and innuendo and conduct has been quoted  in the facts section of this complaint and in the 10th Cause of action.

161. The main harasser , Michelle Blate was not a supervisor but a co worker while at NYU and a stalker while she was employed, or an agent , either as a servant, independent contractor or other capacity; who constantly harassed plaintiff into trying a Lesbian  sexual relationship; in that Michelle Blate  asked plaintiff for sleep overs, at times touched plaintiff inappropriately; was responsible for the Urine on the stick incident discussed in the facts section; was responsible for smearing red jelly on a toilet seat in the neuro surgical office bathroom all to upset and bother plaintiff.

162. That plaintiffs supervisors, had full disclosure  and warning and notice of this behavior from  Michelle Blate, and had knowledge of the conduct and behavior  of Dr. Wissoff, A SUPERVISING DOCTOR. One supervisor Maria Brilliant, admitted to breaking into Plaintiffs medical chart without authorization without a HIPA  authorization.

163.Defendants disparate treatment of plaintiff on the basis of her gender, female, was in violation of the New York State Human Rights Law.

164. As a result of the foregoing, plaintiff has been denied employment, lost wages, benefits, promotional opportunities, bonuses , has suffered mental anguish, emotional distress and loss of enjoyment of life, and has incurred damages thereby.

## AS AND FOR A 4TH CAUSE OF ACTION FOR AGE DISCRIMINATION AGAINST ONLY THE NYU DEFENDANTS

165.That plaintiff, repeats, realleges and reiterates each and every allegation in the Statement of Facts and in the prior causes of action.

166. At all times herein mentioned the plaintiff was an employee within the meaning of the Age Discrimination in Employment Act(29 USCA Section 621, and the New York State Human Rights Law)protected against discrimination in employment on the basis of her age and was a member of a protected group of workers, 40 years of age or older.

167.At all times herein mentioned , defendant was an employer within the meaning of the Age Discrimination in Employment Act(29 USCA Section 621 and under the NYS Human Rights Law) and as such was prohibited from

discriminating in employment on the basis of age.

168.That plaintiff filed a timely charge with the Equal Employment Opportunity Commission and or the NYS Division of Human Rights on April 11,2012.

169. Plaintiff has exhausted all available and required administrative remedies.

170. That Plaintiff has been discriminated against by defendants by the basis of her age in violation of the  Age Discrimination in Employment Act(29 USCA Section 621 and the New York State Human Rights Law by defendants engaging in a course of conduct which included: the plaintiff working her way up over 19 years as a nurse and nurse practitioner ; receiving numerous condations and raises and satisfactory job performance; pressure on plaintiff to quit or resign due to her age as well as the other described reasons; the replacement by or retention of other less qualified younger employees; defendants desire to hire younger employees and defendants knowledge of and reckless disregard and reckless indifference to the law.

171. Since plaintiff s termination , plaintiff has been unable to , despite her best efforts ,to find comparable employment.

172. As a proximate result of the foregoing, plaintiff has been denied

employment; has lost wages, benefits, promotional opportunities, and bonuses, and has incurred damages thereby.

Wherefore, plaintiff prays that this court grant judgment to her containing the following relief:

a. An order that defendants hire plaintiff or restore plaintiff to her former position with full seniority, status, salary increments, bonuses and benefits, to the same extent that she would have received but for defendants unlawful conduct;

b. An order prohibiting defendant from continuing or maintaining the policy, practice and or custom of denying job benefits to employees on the basis of age;

c. An award to plaintiff of her actual damages in an amount to be determined at trial for loss of wages, benefits, promotional opportunities, including an award of front pay, compensating plaintiff for loss of future salary and benefits.

D. An award of Double damages as liquidated damages under 29 USCA 626(b).

E. For plaintiffs reasonable attorney fees and such other and further relief as this court deems just and proper.

## AS AND FOR A 5TH CAUSE OF ACTION FOR TERMINATION IN ORDER TO PREVENT EMPLOYEE FROM OBTAINING PENSION BENEFITS against only the NYU defendants

173. That plaintiff, repeats, realleges and reiterates each and every allegation in the

Statement of Facts and in the prior causes of action.

174.  Plaintiff was entitled to ERISA-protected benefits.

175. That Plaintiff was made promises about the company benefits available to her as a nurse and Nurse Practitioner for Defendants.

176. That Plaintiff was made promises about the terms of the pension plan vesting rights based upon the length of job tenure and prior awards and commendations.

177. That Defendants wilful acts of Termination of Plaintiff's position, intended to deprive Plaintiff of ERISA protected benefits.

178. That Defendants , upon information and belief fired Plaintiff shortly before the vesting of her pension.

179 That defendants, upon information and belief could save a lot of money by this unlawful conduct, such as defendants desire to avoid paying pension ; lifetime Insurance benefits, plaintiffs compensation while employed, and plaintiffs inability despite her best efforts, reasonable efforts to find comparable employment.

180. That plaintiff was terminated by defendants in order to deprive plaintiff of pension benefits due, in violation of ERISA, Employment Retirement Income Security Act.

## AS AND FOR A 6TH CAUSE OF ACTION FOR DISABILITY DISCRIMINATION: FAILURE TO PROVIDE A REASONABLE ACCOMMODATION against only the NYU defendants

181. That plaintiff, repeats, realleges and reiterates each and every allegation in the Statement of Facts and in the prior causes of action.

182. Plaintiff served a copy of this complaint upon the NYC Commission on Human Rights.

183. That defendants NYU participated in the Workers Compensation hearings and procedures involving the plaintiff.

184. That the Workers Compensation Board declared in 2011 that the Hospital was a hostile work environment and that defendants NYU knew about this; in fact they participated in the hearings.

185. Defendants knew that plaintiff was now working under to what amounted to a disability.

186. That defendants failed to arrive at a reasonable accommodation for plaintiff to do her job and to perform the essential functions of her job.

187. Defendants terminated Plaintiffs employment without ever attempting to accommodate her or her Disability.

188. That Plaintiff has been unable to, despite reasonable efforts to find comparable employment.

189. As a Proximate result of defendants termination of plaintiffs employment with defendants; adverse employment action and its failure to make reasonable accommodation; Defendants discriminated against plaintiff in violation of the New York City Human Rights Law, and Federal ERISA law and caused plaintiff a loss of compensation and benefits, and anguish which she has incurred damages.

190. An order that defendants hire plaintiff or restore plaintiff to her former position with full seniority, status, salary increments, bonuses and benefits, to the same extent that she would have received but for defendants unlawful conduct

191. An order that Defendants make a reasonable accommodation that will allow plaintiff to perform the essential functions of the job .

192. An order prohibiting defendant from continuing or maintaining the policy , practice and or custom of denying job opportunities or benefits to employees on the basis of disability.

193. An award to plaintiff of her actual damages in an amount to be determined at trial for loss of wages, benefits, promotional opportunities, including an award of front pay, compensating plaintiff for loss of future salary and benefits.

194. An award of Punitive  damages.

195. For plaintiffs reasonable attorney fees and such other and further relief as this court deems just and proper.

## AS AND FOR A 7TH CAUSE OF ACTION FOR  DISCRIMINATION BASED ON SEXUAL ORIENTATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW and Federal Constitutional Law.

### Against the NYU defendants only

196. That plaintiff, repeats, realleges and reiterates each and every allegation in the Statement of Facts and in the prior causes of action.

197. Defendants knew or came to know about Plaintiffs sexual orientation by the year 2010.

198. Prior to the filing of this Second Amended Complaint that it was served with a copy of the Second Amended Complaint upon the NYC Commission on Human Rights and the Corporation Counsel of the City of New York in accordance with NYC Administrative Code 8-502.

199. That Defendants terminated Plaintiffs employment party or totally as a result of their discrimination of Plaintiffs sexual orientation.

**200.** That Plaintiff has been unable to, despite reasonable efforts to find comparable employment.

201. As a Proximate result of defendants termination of plaintiffs employment with defendants; adverse employment action and; Defendants discriminated against plaintiff in violation of the New York City Human Rights Law and United States Constitution and Bill of Rights and caused plaintiff a loss of compensation and benefits, and anguish which she has incurred damages.

202. An order that defendants  hire  plaintiff or restore plaintiff to her former position with full seniority, status, salary increments, bonuses and benefits, to the same extent that she would have received but for defendants unlawful conduct

203. An order that Defendants make a reasonable accommodation that will allow plaintiff to perform the essential functions of the job .

204. An order prohibiting defendants from continuing or maintaining the policy , practice and or custom of denying job opportunities or benefits to employees on the basis of sexual orientation.

205. An award to plaintiff of her actual damages in an amount to be determined at trial for loss of wages, benefits, promotional opportunities, including an award  of front pay, compensating plaintiff for loss of future salary and benefits.

206 An award of Punitive  damages.

207. For plaintiffs reasonable attorney fees and such other and further relief as this court deems just and proper.

**As and for a 8th Cause of Action in Religious Discrimination**

**Against the Defendants NYU only.**

208. That plaintiff, repeats, realleges and reiterates each and every allegation in the Statement of Facts and in the prior causes of action.

209. That defendants NYU had a great majority of Jewish people Employed.

210. Dr. Wisoff, Plaintiffs supervising doctor, made statements and Jokes that Plaintiff was the only catholic allowed in the Hospital.

211. Dr. Wisoff stated that they would not have hired Jessica Lessing, an employee at Defendants NYU, if she was not Jewish.

212. The plaintiff was thereafter advised by Jessica Lessing, an employee at NYU that she (Lessing) admits to lying on her Resume and that she was hired due to common Jewishness and not to tell anyone.

213. The New hirings at the hospital asked Plaintiff "if growing up in Catholic house hold was difficult."

214. That the entire medical staff and nursing staff was allowed to make fun of

plaintiffs Catholic beliefs.

215.Plaintiff was made fun of repeatedly that she was a 41 year old virgin and that she was a Catholic and that her religious beliefs caused her discrimination.

216.That Plaintiffs catholic views on abortion were made fun of and held up to ridicule by Jewish Doctors, and Jewish nurses.

217. That Plaintiff had received numerous awards, citations, commendations and raises and praise prior to the last three years when the discrimination and sexual jokes had become worse.

218. That Dr. Wisoff and others held animus against Catholic nurses.

219. That Dr. Wisoff and others held animus against Catholic people.

220. That at other Hospitals religious discrimination and harassment isn't so prevalent or blatent.

221.That plaintiff complained about the anti Catholic behavior of supervisors etc.

222. That no steps were taken to accommodate plaintiffs religious beliefs.

223. That Defendants terminated Plaintiffs employment party or totally as a result of their discrimination of Plaintiffs sexual orientation and Religious beliefs.

224. That Plaintiff has been unable to, despite reasonable efforts to find comparable employment.

225. As a Proximate result of defendants termination of plaintiffs employment with defendants; adverse employment action and; Defendants discriminated against plaintiff in violation of the United States Constitution and New York City Human Rights Law and caused plaintiff a loss of compensation and benefits, and anguish which she has incurred damages.

226. An order that defendants hire plaintiff or restore plaintiff to her former position with full seniority, status, salary increments, bonuses and benefits, to the same extent that she would have received but for defendants unlawful conduct

227. An order that Defendants make a reasonable accommodation that will allow plaintiff to perform the essential functions of the job ;

228. An order prohibiting defendant from continuing or maintaining the policy , practice and or custom of denying job opportunities or benefits to employees on

the basis of sexual orientation,

229. An award to plaintiff of her actual damages in an amount to be determined at trial for loss of wages, benefits, promotional opportunities, including an award of front pay, compensating plaintiff for loss of future salary and benefits.

230. An award of Punitive damages.

231. For plaintiffs reasonable attorney fees and such other and further relief as this court deems just and proper.

**WHEREFORE,** Plaintiff demands judgment as follows: Under the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eigth Causes of action in Damages, in an amount not less than Eighty Million Dollars( $80,000,000.00) to be determined at trial; Under all the causes of action Punitive Damages in an amount not less than Eighty Million Dollars( $80,000,000.00) to be determined at trial; Interest on all amounts due; Plaintiffs costs of this action, together with her reasonable attorney fees to the full extent of the law; under the 7th Cause of action plaintiff prays for the following: an award for the actual damages, loss of wages, benefits, promotional opportunities, loss of future salary;

Under the 6th and 7th Causes of action : to award to plaintiff compensatory damages; A declaration that defendants actions on terminating plaintiff from her

employment were in violation of: Federal Law and the US Constitution and the NYS Executive Law; an award to plaintiff of the costs of the action together with her reasonable attorney fees to the fullest extent of the law; and Such other and further relief as this court deems just and proper.

Dated:      NEW YORK, NEW YORK
            September 16,2013

                        Yours, etc.,

                        **THE LAW FIRM OF JEFFREY LESSOFF**
                        125 Maiden Lane Suite 202
                        New York, New York 10038
                        212-219-9257

                        Jeffrey Lessoff (9460)

Re: Haight v. NYU Langone Medical Center, et al.
    U.S. District Court, Southern District
    Docket No.: 13-civ-04993(LGS)

## P L A I N T I F F ' S   V E R I F I C A T I O N

The undersigned is the plaintiff in the within action; has read the foregoing, **Amended Complaint** and knows the contents thereof; the same is true to plaintiff's own knowledge, except as to those matters said to be upon information and belief and as to those matters, plaintiff believes it to be true.

Dated: New York, New York
       September 16, 2013

_____
KRISTIN HAIGHT