UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                        :

KRISTEN HAIGHT,                      :

                    Plaintiff,   :

                            :

      -against-              :

                            :

NYU LANGONE MEDICAL CENTER, INC.,  :
et al.,

                            :

                 Defendants. :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/4/2016

13 Civ. 4993 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiff Kristen Haight's remaining claims against Defendants NYU Langone Medical Center, Inc., NYU Medical Center and NYU School of Medicine (collectively, "NYU") are for: (1) negligent supervision or retention of an unfit employee under New York law; (2) hostile work environment under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq.; and (3) disability discrimination under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 et seq. Defendants move for summary judgment on these remaining claims. For the reasons below, the motion is granted in part and denied in part.

I.    **BACKGROUND**

Unless otherwise noted, the facts below are taken from the parties' submissions filed in connection with this motion. Plaintiff did not file responses to each paragraph in Defendants' Local Rule 56.1 Statement and explicitly states that she "does not object to the facts alleged" in Defendants' Local Rule 56.1 Statement.[1] Accordingly, the averments in Defendants' Local Rule

_____

[1] Plaintiff's submission suffers from several deficiencies. Among other things, without seeking permission, Plaintiff's opposition papers contain one declaration and one affidavit in

56.1 Statement are deemed admitted for purposes of this summary judgment motion to the extent that they are supported by the record. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (stating that when a non-moving party does not respond to a Local Rule 56.1 Statement, a court may either rely upon that Statement or elect to conduct a review of the record); *see also* Local Rule 56.1(c) ("Each numbered paragraph . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").

Plaintiff began working for NYU Hospitals Center ("NYUHC"), a separate entity within NYU Langone Medical Center, in July 1992 as a registered nurse in pediatrics.[2]  After becoming a nurse practitioner, Plaintiff worked in both NYUHC and in the private practice of Dr. Jeffrey Wisoff, who was in charge of the division of pediatric neurosurgery at NYUHC.

In or around January 2005, another nurse practitioner, Michelle Blate, was hired to work in the division of pediatric surgery.  Plaintiff began having problems with Blate shortly after Blate began working for NYUHC.  Beginning in 2005, Blate called Plaintiff late at night, asking to come over, order in and/or rent a movie, and attempted to initiate sleepovers after work functions.  Plaintiff believed that Blate was "sexually obsessed" with her and declined these invitations.

---

excess of the ten-page limit set by the Court's Individual Rules.  Plaintiff also filed at least two exhibits in excess of the fifteen-page limit set by the Court's Individual Rules and made no effort to excerpt exhibits "to include only relevant material" as required by the Individual Rules. Plaintiff is advised that continued disregard for the Court's rules and instructions may result in sanctions.

[2]     Defendants assert that NYU Hospitals Center has been incorrectly named in this lawsuit as NYU Langone Medical Center, Inc., NYU Medical Center and NYU School of Medicine.

In or around June 2005, Blate attempted to get Plaintiff terminated for not returning Blate's late night phone calls and refusing her advances.  In 2006 and 2007, Blate continued attempting to spend time with Plaintiff outside of work by inviting Plaintiff to after work gatherings.  Blate occasionally invited Plaintiff to have lunch, go shopping, get her hair blown out and share a cab to and from work related events.  During an unspecified period, Blate "made frequent sexual gestures" towards Plaintiff; Blate stroked, grabbed and pulled on her crotch area, picked at her behind or touched her breasts when she spoke with Plaintiff.  Plaintiff complained to her supervisors about Blate's behavior, but the complaints were not resolved.

In January 2008, Plaintiff went to the emergency department at NYU because her existing gynecological problems had become increasingly worse.  During that visit, Plaintiff asked her physician to avoid putting certain embarrassing information in her chart, including notations about vaginal bleeding and the fact that she was a virgin.

In or around the fall of 2008, Plaintiff discussed her concerns about being a patient at NYUHC with Director of Care Management Maria Brillant and Assistant Manager of Nurse Practitioners and Physician Assistants Phyllis Marchitelli.  Plaintiff told Brillant and Marchitelli that Blate had engaged in inappropriate behavior towards her and that she was concerned that Blate would try to access her medical files.  Plaintiff requested that she be identified with a different name when she was treated as a patient at NYU.  Marchitelli told Plaintiff that she would be safe, and Brillant said that her name could be changed in the system if necessary.

On January 4 and 5, 2009, Blate breached security and accessed Plaintiff's medical records without permission or a valid reason.  A later NYU investigation around November 2009 uncovered this breach.

In 2009 or 2010, or perhaps earlier, while Plaintiff bent over a desk to pick up a scan, Blate put her hands inside Plaintiff's pants, ostensibly to fix Plaintiff's underwear tag.  Plaintiff jumped up and pushed Blate's hands off her.  Although Plaintiff reported this incident to the NYU Director of Nurse Practitioners and Dr. Wisoff, no action was taken.

In early January 2009, Plaintiff underwent another surgery.  During Plaintiff's sick leave following the surgery, Dr. Wisoff called Plaintiff at home with questions about patients.  During this call, Dr. Wisoff's daughter spoke with Plaintiff and stated that Plaintiff could treat endometriosis by getting pregnant.  On another occasion in 2009, Dr. Wisoff gave Plaintiff a book, advising her that it had a section on women who were cursed by God because they have no children.

Plaintiff returned to work in or around late January 2009.  At around the same time, Dr. Roth, who worked in Dr. Wisoff's practice, told Plaintiff that he heard that she had a surgical problem and that she was better now.  Plaintiff did not know how Dr. Roth learned about her surgery.  Also at around this time, Blate whispered to Plaintiff to ask how she was doing.  Because Blate would typically yell, grunt or throw things at Plaintiff, Plaintiff suspected that Blate knew that Plaintiff had undergone a gynecological surgery because Blate had whispered on this occasion.  Plaintiff suspected that others had learned about her medical information because, between January and June 2009, another colleague, Maggie Cosme, asked Plaintiff more than once why she was not pregnant yet.  These questions and comments led Plaintiff to request that Brillant investigate a potential breach of her medical records around late February 2009.  Brillant, however, refused to conduct an investigation because the allegations were based on Plaintiff's hunch.

While Plaintiff was attending a wedding in the Caribbean in early March 2009, Blate left Plaintiff "aggressive" messages asking when she would return to work.  Plaintiff testified in her deposition that Blate had called Plaintiff once during the wedding and did not send any text messages, but Plaintiff's affidavit states that she received "regular threatening harassing text messages" from Blate during this period.  Around March 5, 2009, Plaintiff again asked Brillant to investigate Blate for potential violations of the Health Insurance Portability and Accountability Act ("HIPAA"), and Brillant responded that Blate was already in trouble for reasons unrelated to Plaintiff.  In March 2009, Blate again accessed Plaintiff's medical records without authorization, which was revealed by the later investigation.

 In or around June 2009, Plaintiff spoke with an administrator at NYU Langone Medical Center, Maria Corbo, regarding her concerns about Blate's suspected unauthorized access of Plaintiff's medical records.  Plaintiff told Corbo that she suspected Blate and other staff members knew details in her medical files that only a surgeon with access to those files would know. Corbo called NYU Compliance Officer, Maxine Simon, for guidance on how to handle Plaintiff's situation and then provided Plaintiff with a packet of information and Simon's phone number and encouraged Plaintiff to contact Simon.

Around July 2009, Plaintiff was treated at NYU's emergency room because she injured her ribs.  The emergency room doctor recommended a bone scan to determine if her ribs were fractured.  Several days later, the bone scan revealed that Plaintiff had fractured several ribs. When a colleague asked Plaintiff if she had broken her ribs, Blate interjected that Plaintiff had not.  Since Blate spoke with certainty about Plaintiff's condition, Plaintiff suspected that Blate

accessed her emergency room files in violation of HIPAA because these records did not include the bone scan showing the fractured ribs.

In the fall of 2009, Natasha Antoine, a secretary in Dr. Wisoff's practice, informed Plaintiff that she had learned from another secretary that Plaintiff was a virgin.  As of the fall of 2009, Plaintiff had not told anyone in the office that she was a virgin.  Around this same period, various doctors asked Plaintiff how she was feeling and whether she was having any more surgeries.  In 2009 or 2010, Plaintiff found a substance that looked like strawberry jam on the office toilet seat.

In or around October 26, 2009, Plaintiff informed Simon that she had complained to Brillant that Blate and others may have improperly accessed her medical files on more than one occasion, but Brillant had not conducted an investigation.  Simon told Plaintiff to submit a complaint and said that she would follow up with Plaintiff within thirty days of receiving the complaint.

In around November 2009, Plaintiff started looking for other placements at NYU.  In December 2009, Plaintiff met with Brillant and Sheila Furjanic, who had replaced Simon as the compliance officer, and told them that she suspected other individuals besides Blate had accessed her medical records in violation of HIPAA.  Furjanic responded that NYU could not fire the whole hospital.  About a month later, on January 4, 2010, Dr. and Mrs. Wisoff told Plaintiff that Blate was on a leave of absence due to personal space issues.  On or around January 5, 2010, Furjanic informed Plaintiff that Blate had been fired for improperly accessing Plaintiff's medical records and was not allowed on NYUHC premises.

Around this time, the staff in Dr. Wisoff's practice started treating Plaintiff worse. Throughout 2010, a staff member repeatedly asked Plaintiff why she was not pregnant yet. In around February 2010, Dr. Wisoff mentioned the movie *The 40 Year-Old Virgin* in Plaintiff's presence. Shortly thereafter, a secretary asked Plaintiff if she had fibroids and why she was not pregnant. Sometime between February and March 2010, Plaintiff found a used pregnancy stick in the top drawer of the desk in the communal office where she kept her belongings. In or around April 2010, Plaintiff informed Dr. Wisoff that she was visiting a male friend in Europe, and Dr. Wisoff told Plaintiff that she should let him know the moment that she conceived. In or around May 2010, Dr. Wisoff mentioned the movie *The 40 Year-Old Virgin* again and stated that sex was like petting something furry for the first time.

In or around 2009 or 2010, Plaintiff wore a blouse with a decorative bow in the back and Dr. Wisoff pulled at the bow and untied it. Around the same time, when Plaintiff handed Dr. Wisoff papers on approximately five occasions, Dr. Wisoff touched Plaintiff's fingers in a manner that Plaintiff found sexually suggestive. Sometime in 2010, Dr. Wisoff touched Plaintiff's hips in front of others in the reception area and made a quacking sound that frightened Plaintiff. In 2010, Dr. Wisoff also asked Plaintiff to grab a cell phone and piece of paper out of the pocket of his scrubs despite Plaintiff's protest, ostensibly because he had already scrubbed for surgery. On another occasion in 2010, Dr. Wisoff said in front of Plaintiff that he was masturbating while waiting for the operating room to open and that it would get sticky if the operating room did not open soon. On unspecified dates, Dr. Wisoff asked the nurses to take his blood pressure and, when they did so, he rested his arm on their legs. Dr. Wisoff also

occasionally referred to himself as "Big Jeff," which Plaintiff interpreted to have sexual undertones.

In or around February 2010, Dr. Ilia Kramer told Plaintiff that he had seen Blate outside NYU and that Blate indicated to him that she would be back soon.  Between March and April 2010, several people informed Plaintiff that Blate was on NYU premises working for Medtronics, a vendor of NYUHC.

In or around March 2010, Plaintiff asked Brillant to consider her for an opening on Brillant's team because Plaintiff wanted to get away from Blate and thought she would be safe in a different building.  In response, Brillant offered Plaintiff a short-term position to assist with paperwork that only lasted a few days, which Plaintiff accepted.

In or around April 2010, Nidia Ortiz, a secretary, informed Plaintiff that she had seen Blate on the pediatric floor.  On or around April 8, 2010, Antoine informed Plaintiff that Blate had called Dr. Wisoff's office, asked if Plaintiff would be there and stated that she (Blate) was going to visit the office.  This news caused Plaintiff to feel sick, lose feelings in both her arms and legs and fall to the floor.  Plaintiff called NYU's security to ask what she should do if a former employee fired for a HIPAA breach had called "in a stalking way," and security informed her that she should call 911.

Plaintiff did not call 911.  Instead, Plaintiff went to the NYU Employee Health Center and spoke with Furjanic, who confirmed that Blate had been fired for accessing Plaintiff's medical records.  After speaking with Furjanic, Plaintiff spoke with Sharon Jeter Gomez, a member of NYUHC's human resources team with responsibilities for on-the-job injuries. Plaintiff also called the Office of Professional Discipline in Albany, New York, to inquire

whether Blate had been formally disciplined for the HIPAA violations and learned that there were no complaints in Blate's files and that Blate was in good standing.

In August 2010, Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD") due to Dr. Wisoff's and Blate's behavior.  On or around August 5, 2010, Dr. Donato Pacione informed Plaintiff that he had seen Blate using the hospital phones because Plaintiff had asked Dr. Pacione to warn her if he saw Blate.  Later that day, Plaintiff saw Blate using the hall phone in the operating room suite, which caused Plaintiff to throw up in a garbage can and walk into an operating room.  Blate did not speak to Plaintiff and had disappeared by the time Plaintiff left the operating room approximately five minutes later.

On around August 30, 2010, Plaintiff heard Blate laugh in Dr. Wisoff's office although Plaintiff did not see her.  The same day, Antoine warned Plaintiff that Blate was in the office.  This news about Blate prompted Plaintiff to throw up and call security.  After being escorted out of Dr. Wisoff's office by security, Plaintiff met with security and then went to the employee health center to speak with corporate counseling.

Plaintiff's last day working actively as an employee at NYU was on August 30, 2010.  In or around June 2011, NYUHC terminated Plaintiff's employment.  Plaintiff stated at her deposition in February 2015 that she could not return to work for NYUHC because she needed a "guarantee" that Blate would not be on NYUHC premises.

After Plaintiff stopped working for NYUHC, she continued to work for West Care Medical Associates, a private practice not associated with NYUHC, where Plaintiff had been working since 2001.  In or around October 2010, Plaintiff worked in multiple offices of Tribeca Pediatrics for approximately three months.  Plaintiff consistently obtained per diem work after

leaving NYUHC.  In around October 2012, while Plaintiff was working at Roosevelt Hospital, Plaintiff learned that NYUHC surgeons, including Dr. Wisoff, might be working at Roosevelt Hospital due to hurricane-related flooding.  Plaintiff could not return to Roosevelt Hospital because she was unable to confirm if Dr. Wissof worked there.

Plaintiff filed her original complaint in this action in New York State Court on September 2, 2011.  On July 16, 2013, NYU removed this action to the Southern District of New York based on Plaintiff's ERISA claim, which created federal question subject matter jurisdiction.  On September 19, 2013, Plaintiff filed the Third Amended Complaint (the "Complaint"), which is still the operative complaint.

## II.    LEGAL STANDARD

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before a court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.  *See Young v. United*

*Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015); *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby*, 477 U.S. at 248.

## III.   DISCUSSION

### A.   Materials Excluded From this Motion

Defendants request that the following materials filed in opposition to this summary judgment motion be struck or disregarded in deciding this motion:  (1) the declaration of Plaintiff's attorney, Jeffrey Lessoff; (2) Plaintiff's affidavit; and (3) the affidavit of witness Natasha Antoine.  For the reasons discussed below, this request is granted in part and denied in part.

#### 1.   Lessoff Declaration

The Lessoff declaration is disregarded because it contains impermissible legal conclusions and factual assertions not based on personal knowledge.  "Pursuant to Local Civil Rule 7.1, legal argument is to be set forth in a memorandum of law, while factual affirmations are to be set forth in affidavits." *Bosch v. LaMattina*, 901 F. Supp. 2d 394, 403 (E.D.N.Y. 2012); *accord A.R. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 7144, 2014 WL 5462465, at *10 (S.D.N.Y. Oct. 28, 2014).  Declarations in support of summary judgment motions "must be made on personal knowledge . . . ." Fed. R. Civ. P. 56(c)(4).  "An affidavit of the opposing party's attorney which does not contain specific facts or is not based on first-hand knowledge is not

entitled to any weight." *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983).  As the Lessoff declaration fails to meet these requirements, it is not considered.[3]

### 2.      Plaintiff Affidavit

Defendants ask that Plaintiff's affidavit be struck or disregarded, arguing that it contradicts her prior deposition testimony.  This request is denied.

The sham issue of fact doctrine "prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony."  *In re Fosamax Prods. Liab. Litig.,* 707 F.3d 189, 193 (2d Cir. 2013) (per curiam).  The contradictions, however, must be "unequivocal and inescapable" and "central to the claim at issue," and mere discrepancies in the record or quotes taken out of context are insufficient to create a sham issue of fact.  *Id.* at 194.  "[I]f there is a plausible explanation for discrepancies in a party's testimony, the court . . . should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete."  *Id.* (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011)).

Here, the discrepancies between Plaintiff's deposition testimony and her affidavit are insufficient to justify the application of the doctrine.  Defendants assert that the new allegations in Plaintiff's affidavit -- that Blate would touch her genitals or breast while speaking with Plaintiff and that Dr. Wisoff stated in Plaintiff's presence that he was masturbating -- should be

---

[3]      By Order dated June 9, 2015, the affirmation of Jeffrey Lessoff dated June 5, 2015, was struck because it contained impermissible legal conclusions and factual assertions not based on personal knowledge.  That Order gave Plaintiff's counsel one week to file an affidavit or declaration that complied with Rule 56 and Local Rule 7.1.  Plaintiff's counsel, however, disregarded that Order when it filed the instant declaration, which is substantially similar to the prior stricken declaration.

12

disregarded since Plaintiff did not testify about these incidents at her deposition.  Plaintiff,

however, testified about other instances involving alleged sexual harassment by Blate and

Dr. Wisoff, and Defendants have not cited specific testimony that is contradicted by these new

allegations.  Accordingly, the sham issue of fact doctrine is inapplicable, and Plaintiff's affidavit

is considered on this motion.

### 3. Antoine Affidavit

Defendants assert that the Antoine affidavit should be struck because, according to

Defendants, Plaintiff's failure to serve initial disclosures as required by Rule 26(a)(1)(A) denied

them the opportunity to depose Antoine and to seek discovery regarding her knowledge of

Plaintiff's allegations.  Defendants' request to strike is denied as moot as the Antoine affidavit is

unnecessary to decide this motion and therefore is not considered.

### B. Negligent Supervision and Retention Claim

The first cause of action in the Complaint alleges that Defendants are liable for negligent

supervision and retention.  Defendants are entitled to summary judgment on this claim as it is

preempted by New York's Workers' Compensation statute.

The relevant statute provides that "[t]he right to compensation or benefits under this

chapter, shall be the exclusive remedy to an employee . . . when such employee is injured or

killed by the negligence or wrong of another in the same employ . . . ."  N.Y. Work. Comp. Law

§ 29(6).  "[S]tate common law negligence claims are therefore precluded by the exclusive

remedy provisions of New York's Workers' Compensation statute."  *Ferris v. Delta Air Lines,*

*Inc.*, 277 F.3d 128, 138 (2d Cir. 2001) (affirming grant of summary judgment for negligent

retention and supervision claims as precluded by New York's Workers' Compensation statute).

Plaintiff argues in opposition that preemption does not apply to gross negligence or intentional acts.  This argument is unpersuasive for several reasons.  First, gross negligence or recklessness is not an exception to New York's Workers' Compensation statute.  *See, e.g.*, *Gagliardi v. Trapp*, 633 N.Y.S.2d 387, 388 (2d Dep't 1995) (stating that the remedy for allegations that at most amounted to gross negligence or recklessness was covered by New York's Workers' Compensation statute); *Bardere v. Zafir*, 477 N.Y.S.2d 131, 134 (1st Dep't 1984) ("The description of such conduct as 'criminal negligence' is merely the equivalent of an allegation of gross negligence or reckless conduct, which does not except it from the 'exclusive remedy' provisions of the Workers' Compensation Law."), *aff'd*, 63 N.Y.2d 850 (1984).

Second, the Complaint explicitly states that this cause of action is for negligent supervision and retention and nothing in the Complaint or the factual record filed in connection with this motion suggests an intentional tort.  "To sufficiently plead an intentional tort that will neutralize the [New York's Workers' Compensation] statute's exclusivity there must be alleged an intentional or deliberate act by the employer directed at causing harm to the particular employee."  *Acevedo v. Consol. Edison Co. of New York*, 596 N.Y.S.2d 68, 71 (1st Dep't 1993).  "In order to constitute an intentional tort, the conduct must be engaged in with the desire to bring about the consequences of the act."  *Id*. (quoting *Finch v. Swingly*, 348 N.Y.S.2d 266, 268 (4th Dep't 1973)).  Here, the alleged conduct does not meet the necessary threshold of a willful intent to harm Plaintiff.  This argument therefore fails.

### C.    Hostile Work Environment Claim

The third cause of action alleges sexual harassment under a theory of hostile work environment in violation of the NYSHRL.  Defendants assert that they are entitled to summary

14

judgment on this claim because (1) Plaintiff's claims before September 2, 2008, are time-barred; (2) the undisputed facts demonstrate that Plaintiff was not harassed by Dr. Wisoff or Blate; and (3) even if Blate harassed Plaintiff, Blate's conduct could not be imputed to Defendants.  For the reasons stated below, Defendants' motion for summary judgment on this claim is denied.

### 1.        Statute of Limitations

Plaintiff's NYSHRL claim of hostile work environment for incidents before September 2, 2008, is not time barred as a reasonable fact finder could conclude that those incidents are sufficiently related to events within the limitations period.  NYSHRL claims are subject to a three-year statute of limitations.  N.Y. C.P.L.R. 214(2).  Hostile work environment claims are different from claims of discrete discriminatory acts because "[t]heir very nature involves repeated conduct.  The unlawful employment practice . . . occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (internal citation and quotation marks omitted).

In assessing the timeliness of hostile work environment claims, courts analyze: (1) "whether [the plaintiff] alleged any discriminatory act within the limitations period"; and (2) whether the acts that took place within the limitations period "were sufficiently related to" acts outside of the limitations period "to be part of the same alleged hostile work environment practice."  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76-77 (2d Cir. 2010) (discussing statute of limitations for Title VII hostile work environment claim); *see also Summa v. Hosftra University*, 708 F.3d 115, 123-24 (2d Cir. 2013) ("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard.").  Courts should make an

"individualized assessment" of relatedness, determining whether "as a matter of law that the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment." *McGullam*, 609 F.3d at 77-78 (quoting *Rowe v. Hussmann Corp.*, 381 F.3d 775, 781 (8th Cir. 2004)).  If the incidents are sufficiently related, then the acts that took place outside of the limitations period may be considered on the merits as part of the hostile work environment claim.  *See id.*

Plaintiff commenced this action on September 2, 2011.  Therefore, discriminatory acts committed before September 2, 2008, are time barred unless they are sufficiently related to discriminatory acts committed within the limitations period.  Here, Plaintiff testified that Blate began sexually harassing her in 2005 and that the harassment continued into the limitations period.  Drawing all permissible factual inferences in Plaintiff's favor as is required on this motion, a reasonable fact finder could conclude that the incidents alleged before the limitations period are sufficiently related to the incidents after that period to be part of the same hostile work environment practice, as they involve the same perpetrator and the same kind of alleged sexual harassment.  *See Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 242 n.2 (2d Cir. 1984) ("Where the statute of limitations operates as an affirmative defense . . . issues of fact as to the application of that defense must be submitted to the jury.").  Accordingly, the incidents before September 2, 2008, are not considered time barred at this time.

### 2.    Hostile Work Environment Allegations

Plaintiff has submitted sufficient evidence to create an issue of fact and therefore summary judgment on this claim is denied.  To prevail on a hostile work environment claim under the NYSHRL, a plaintiff "must make two showings: (1) that the harassment was

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Summa*, 708 F.3d at 124.

Regarding the first prong, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310-11 (2004) (applying the *Harris* standard to New York state law claim of hostile work environment).  "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Harris*, 510 U.S. at 21).

The alleged misconduct "must be extreme to amount to a change in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* "[R]elevant factors include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23).  "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Feingold v. New York*, 366 F.3d

138, 150 (2d Cir. 2004) (quoting *Alfano*, 294 F.3d at 374).  Although one encounter may

constitute a hostile work environment if it is sufficiently severe, conduct that can be categorized

as a few isolated incidents, teasing, casual comments or sporadic conversation will not be

deemed to create a hostile work environment.  *See Faragher*, 524 U.S. at 787-88; *Quinn v.*

*Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998).

When viewed in the light most favorable to Plaintiff, the acts and comments of

Dr. Wisoff, Blate and Plaintiff's other co-workers are sufficient for a fact finder to conclude that

a hostile work environment existed because of Plaintiff's sex in violation of the NYSHRL.  In

particular, Plaintiff has proffered evidence that Blate placed her hands inside Plaintiff's pants and

that, after Blate illegally entered Plaintiff's medical records, Blate and other NYU employees

harassed Plaintiff in 2009 and/or 2010 regarding her virginity, future sexual experiences,

potential pregnancy and gynecological problems, and made gestures and comments with sexual

innuendo.  *See Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 181-82 (2d Cir. 2012) (stating that a

reasonable fact finder could conclude that female area supervisor touched female plaintiff's

breasts because of plaintiff's sex and reversing grant of summary judgment); *Kaytor v. Elec.*

*Boat Corp.*, 609 F.3d 537, 549-50 (2d Cir. 2010) (vacating grant of summary judgment because a

rational juror could infer from overtly sexual comments that facially gender-neutral comments

were made because of plaintiff's sex).

A reasonable fact finder could conclude that these actions, taken together, were

sufficiently severe and pervasive to create a hostile work environment.  *See, e.g.*, *Mansuetta v.*

*Clarkstown Cent. Sch. Dist.*, No. 11 Civ. 649, 2012 WL 5992171, at *5-6 (S.D.N.Y. Nov. 13,

2012) (denying summary judgment on hostile work environment claim where plaintiff proffered

18

evidence that department chair "smack[ed] her on the rear" at a work function); *Caban v. Richline Grp., Inc.*, No. 10 Civ. 559, 2012 WL 2861377, at *8-11, *14 (S.D.N.Y. July 10, 2012) (denying summary judgment on hostile work environment claims where plaintiff presented evidence that, among other things, she received repeated sexual advances and rude and offensive comments).  Plaintiff has also proffered evidence that, despite her complaints, Defendants failed to address these matters.

In seeking a contrary outcome, Defendants argue that Dr. Wisoff's alleged misconduct occurred "over the course of years" and was too isolated and sporadic to amount to sexual harassment.  This argument fails for at least two reasons.  First, Defendants improperly dilute the strength of Plaintiff's claims by combining relatively benign periods and the period of more extensive impropriety after Plaintiff's medical records were breached in 2009.  *See Aulicino*, 580 F.3d at 84 (reversing grant of summary judgment because a district court "should have discounted from its analysis, if not altogether disregarded, the intervening period between comments by one supervisor and comments by another").  Second, Defendants view Dr. Wisoff's actions in isolation from the conduct of other NYU employees in 2009 and 2010, even though "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances."  *Harris*, 510 U.S. at 23; *see also Redd*, 678 F.3d at 176 (stating that courts "must take care . . . not to view individual incidents in isolation").  Accordingly, this argument fails.

Defendants also argue that, even if Plaintiff were subjected to sexual harassment by Blate, Defendants cannot be liable for that harassment because there is no evidence that Defendants encouraged or condoned Blate's misconduct.  This assertion is incorrect.  Under the

NYSHRL, an "employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." *Bianco v. Flushing Hosp. Med. Ctr.*, 863 N.Y.S.2d 453, 454 (2d Dep't 2008) (quoting *Matter of Totem Taxi v. New York State Human Rights Appeal Bd.*, 65 N.Y.2d 300, 305 (1985)). "An employer's calculated inaction in response to discriminatory conduct may, as readily as affirmative conduct, indicate condonation." *Id.* at 455 (quoting *Matter of State Div. of Human Rights v. St. Elizabeth's Hosp.*, 66 N.Y.2d 684, 684 (1985)). Here, a reasonable fact finder could conclude from the evidence that Defendants did nothing in response to Plaintiff's complaints about Blate's conduct, including Blate touching herself while speaking to Plaintiff and Blate fixing Plaintiff's underwear tag without permission. A reasonable fact finder also could find that Defendants delayed investigating Blate's improper access into Plaintiff's medical files. Accordingly, Defendants' effort to separate themselves from Blate's alleged misconduct fails.

### D.    Disability Discrimination Claim

The sixth cause of action asserts that Defendants failed to reasonably accommodate Plaintiff's PTSD disability in violation of the NYCHRL. Defendants argue that they are entitled to summary judgment on this claim because Plaintiff cannot show that she could perform the essential functions of her job with a reasonable accommodation or that Defendants refused to reasonably accommodate her alleged disability. Defendants' arguments are unpersuasive and this claim survives.

"[I]n 2005, the New York City Council amended the [NYCHRL] to emphasize that 'interpretations of state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall' and that the NYCHRL should 'be construed liberally for the

accomplishment of the uniquely broad and remedial purposes thereof.'" *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75 (2d Cir. 2015) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)).  The NYCHRL is therefore construed "broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Id.* (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011)).

In analyzing discrimination claims brought under the NYCHRL, "the plaintiff must establish a prima facie case, and the defendant then has the opportunity to offer legitimate reasons for its actions."  *Id.* at 75-76.  "In order to establish that an employer failed to reasonably accommodate an employee's disability, a plaintiff must show that 1) she was disabled within the meaning of the statutes; 2) the employer had notice of the disability; 3) she could perform the essential functions of her job, with a reasonable accommodation; and 4) the employer refused to make a reasonable accommodation." *LaCourt v. Shenanigans Knits, Ltd.*, 966 N.Y.S.2d 347 (Table), at *4 (N.Y. Sup. Ct. 2012) (citing *Pimentel v. Citibank, N.A.*, 811 N.Y.S.2d 381, 385 (1st Dep't 2006)).

Defendants' sole argument on this claim is that Plaintiff cannot establish a prima facie case because "any accommodation [Plaintiff] may have sought would have been impossible to provide" because, according to Defendants, Plaintiff testified that her PTSD prevented her from going near Defendants' facilities.  A reasonable fact finder could conclude, however, that Plaintiff's PTSD was triggered by proximity to Blate and Dr. Wisoff -- not by the entirety of NYU as Defendants suggest -- and that Defendants could have provided reasonable accommodation by, among other things, reassigning Plaintiff to a different position in a different location.

Defendants also argue that they provided reasonable accommodation by providing Plaintiff with an extended leave of absence from August 2010 through June 2011.  However, Defendants do not cite to any evidence to support this assertion.  Plaintiff testifies to the contrary in her affidavit, stating that she earned all the time that she took off, and Defendants did not voluntarily provide her any leave.  All facts must be taken in the light most favorable to Plaintiff on this motion, and Defendants' argument cannot defeat the disability discrimination claim.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED as to the negligent supervision and retention claim, and DENIED as to the hostile work environment and disability discrimination claims.  The Clerk of Court is directed to close Dkt. No. 89.

SO ORDERED.

Dated: January 4, 2016
        New York, New York


LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE